# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| WENDY BENSON, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | CIVIL ACTION FILE NO. |
| v. ) | |
| ) | 1:16-CV-04638-CAP-RGV |
| SOLVAY SPECIALTY POLYMERS ) | |
| USA, LLC ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Wendy Benson, by and through her undersigned counsel of record, files this Brief in Response to Defendant Solvay Specialty Polymers ("Defendant" or "Solvay") Motion for Summary Judgment. Because genuine issues of material fact exist with respect to Plaintiff's claim of sexual harassment and her pendant state law claims, summary judgment must be denied as a matter of law for those claims.[1]

### I.    FACTUAL BACKGROUND

Plaintiff incorporates her Response to Defendant's Statement of Facts to Which There is No Genuine Issue to be Tried ("RDSMF") and also her Statement

---

[1] Plaintiff has resolved to withdraw the retaliation claim alleged in her Complaint against Defendant.

1

of Additional Material Facts to Which There is a Genuine Issue to be Tried ("PSMF"), filed contemporaneously with this brief.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. Standard For Summary Judgment

"Summary judgment is such a lethal weapon, depriving a litigant of a trial on the issue, [accordingly] caution must be used to ensure only those cases devoid of any need for factual determinations are disposed of by summary judgment." Tippens v. Celotex, 805 F.2d 949, 952-53 (11th Cir. 1986). Summary judgment is proper only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(a). Genuine issues of fact are those where the evidence is such that a reasonable jury could return a verdict for the non-movant. See Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986). "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tolan v. Cotton, 134 S. Ct. 1861 (2014)(quoting Anderson, 477 U.S. at 255). "In ruling on a Rule 56 motion, the district court may not weigh the evidence or find facts… the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." Morrison v. Amway Corp., 323 F.3d 920, 924 (11th Cir. 2003).

**B. <u>Solvay is Liable for Sexual Harassment</u>**

To establish a sexual harassment claim under Title VII, Plaintiff must show:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

<u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238, 1245 (11th Cir. 1999)(en banc). Defendant concedes all but the fourth and fifth prongs, arguing that the conduct Plaintiff alleges was not severe or pervasive and that it took prompt remedial action in relation to Plaintiff's complaints of sexual harassment. Taken in a light most favorable to Plaintiff, however, the evidence demonstrates there are genuine issues for trial.

**1. The Harassment Complained Of Was Sufficiently Severe Or Pervasive**

As Defendant concedes, whether harassment is sufficiently severe or pervasive is examined from both the Plaintiff's subjective view as well as an objective perspective, that "of a reasonable person in the plaintiff's position, considering all the circumstances." <u>Reeves v. CH Robinson Worldwide, Inc.</u>, 594 F.3d 798 at 809 (11th Cir. 2010). The Eleventh Circuit Court of Appeals has established four factors to examine when determining whether harassment is

3

objectively severe or pervasive: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1998).

Here, Defendant asserts Plaintiff could not have subjectively perceived the harassment to be severe or pervasive because she continued working for Defendant, testified that she loved her job, and sought re-employment after her termination. However, these facts do not negate the fact that Plaintiff subjectively perceived her workplace to be hostile. Plaintiff repeatedly and consistently testified that she perceived the harassment at Defendant's facility to be both severe and pervasive. Plaintiff testified that when she was scheduled to work with Prince, she often requested vacation days to avoid contact with him because of his sexually harassing behavior. (PSMF 22). Additionally, Plaintiff testified, and documentation reflects, that Plaintiff requested multiple shift rotations while she was forced to work with Parks. (PSMF 36, 38, 39, *see* PSMF Ex. N). In the short amount of time Plaintiff worked with Tanner, she also requested to switch shifts with other co-workers to avoid working with him. (PSMF 22).

Plaintiff testified she stayed at her job for as long as she did, and stated she loved her job and that her job was great because she needed to keep her job because

4

of her husband's disability and of the benefits that were attached to her position with Defendant. (Pl. Dep. 271:9-16). Defendant offered Plaintiff a 401(d), a pension plan, a nine or six percent company match, and a health insurance plan with no deductible. (Pl. Dep. 271:9-16, 231:13-17). Plaintiff's testimony was that the company as a whole was great; however, the people that she had to work on the floor with were the issue, the problem was that people would not stop touching her. (Pl. Dep. 231:13-17, 258:21-22).

Further, Solvay dismisses the conduct directed at Plaintiff as not being objectively severe or pervasive, arguing that it was "limited in time and frequency." But Plaintiff testified to almost daily harassment — at times occurring more than once a day — that started shortly after her training was complete and lasted until she was terminated. (Pl. Dec. ¶ 8, 14 – 42). Plaintiff testified that Prince began sexually harassing her in November of 2014, while she was a temporary contract worker with Defendant. (Pl. Dec. ¶ 14). Prince gripped Plaintiff's inner thigh, next to her crotch and proceeded to pick her up, pretending to put her in a dumpster. (Pl. Dec. ¶ 14). The act was so repulsive, Charles, a fellow technician who had witnessed the offensive touching, told Prince to remove his hand and put her down. (Charles Dec. ¶ 3). After she was extended an offer of permanent employment, Plaintiff continued to endure sexually harassing comments and touching from Prince on a frequent basis. (Pl. Dec. ¶ 16, 17). Prince would tout his ability to perform oral sex and

5

invite Plaintiff over to spend the night at his home. (Pl. Dep. 167:20-23, 292:19-24). Despite being admonished by another technician, Prince again placed his hand on Plaintiff's inner thigh next to her crotch and picked her up off the floor pretending to put her into a dumpster. (Pl. Dep.161:20-25). Additionally, Prince would frequently give Plaintiff uncomfortably close hugs and would refer to her as "Sugar Britches" every day. (Pl. Dec. ¶ 16, 17). Plaintiff made continuous complaints to Hawkins who told her "unless you get hit with an ugly stick, you're gonna have to deal with this." (Pl. Dep. 168:21-169:1, 286:9-287:11).

In September of 2015, Plaintiff additionally began being subjected to harassment from Tanner. (Pl. Dec. ¶ 24). During the time Tanner worked with Plaintiff, Tanner asked if he could meet with Plaintiff outside of work; if she had ever been with a "chocolate man"; asked when they were going to have intercourse; told Plaintiff he was going to "cum" down her throat; and threatened that if they ever worked together on the night shift alone, he was going to "f**k" her. Plaintiff complained of sexual harassment by Tanner to Hawkins and asked co-workers to rotate shifts with her. (Pl. Dec. ¶ 25).

Around the fourth week of January 2016, Parks also began sexually harassing Plaintiff, first by grabbing and trying to hold Plaintiff's hand and referring to her as "babe." (Pl. Dep. 309:19-310:5; Pl. Dec. ¶ 29). Parks' conduct progressed into much more extreme sexual harassment, wherein Parks would pull down his pants and

6

expose his erection to Plaintiff, touch Plaintiff's rear when she would bend over to pick up pellets out of the Extruder, grab at her breasts when she would work on the computer, he would wrap his arms around her and hug her from behind with his arms positioned under her breasts, would show her his erection, and would describe to Plaintiff how he would dream about her and masturbate to thoughts of her. (Pl. Dec. ¶¶ 30, 31).

In sum, the harassment Plaintiff endured — from multiple co-workers — was vulgar, insulting, and humiliating. In addition to verbal harassment, Plaintiff was subjected to unwanted physical touching, demands to see her body, sexual propositions, physical threats, intimidation, co-workers exposing themselves to her, and a co-worker grabbing at her crotch. See PSMF, 14-31). There can be no doubt the harassment Plaintiff suffered was not just subjectively severe or pervasive, but objectively severe or pervasive as well. See Mendoza, 195 F.3d at 1245.

### 2. Solvay Is Liable For The Harassment

To impute liability to an employer for sexual harassment, a plaintiff must show her employer knew, or should have known, of the harassment and failed to take immediate and appropriate corrective action. Watson v. Blue Circle, Inc., 324 F.3d 1252, 1257 (11th Cir. 2003). In the instant case, Solvay had actual knowledge that its employees were sexually harassing Plaintiff. (Pl. Dec. ¶ 18, 19, 21, 22, 27, 28, 32, 33, 34, 36, 37).

7

Solvay attempts to avoid liability by asserting the Farragher/Ellerth Affirmative Defense. The Ellerth/Faragher defense requires an employer to prove (1) that it "exercised reasonable care to prevent and correct promptly any harassing behavior" and (2) that the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id*. "Both elements must be satisfied for the defendant-employer to avoid liability, and the defendant bears the burden of proof on both elements." *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1313 (11th Cir. 2001).

To establish the second required element of this affirmative defense, Defendant must prove that Plaintiff either failed to use the company's procedures to report the harassment or that she did not take advantage of any reasonable corrective measures that Defendant may have offered in response to her complaints. *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1306 (11th Cir. 2007). In the instant case, Plaintiff alleges that she reported the incidents of sexual harassment to her supervisor and to HR. (Pl. Dec. ¶ 18, 19, 21, 22, 27, 28, 32, 33, 34, 36, 37). Plaintiff was not legally required to make additional complaints to other members of management to establish that Solvay had additional notice of the sexual harassment. The company's duty was triggered with a report. *See Breda v. Wolf Camera & Video,* 222 F.3d 886, 890 (11th Cir. 2000) (noting that an employee who

complains pursuant to an employer's policy "need not be concerned with whether they pursued their complaints far enough up the company ladder.").

C.  **Sufficient Evidence Exists to Support Plaintiff's State Law Claims**

　　*1.　Assault and Battery*

Prince committed batteries when he put his hand on Plaintiff's inner thigh, next to her crotch and attempted to pick her up off the ground, on two separate occasions and when he would give her uncomfortably close hugs. (Pl. Dec. ¶14). Parks committed batteries when he would reach and grab at her hand, would touch her butt while she was picking up pellets in the Extruder, grab at her breasts while she was working on the computer, and when he would hug her from behind with his arms pushed up under her breasts. (Pl. Dec. 30). Under Georgia law, "[t]wo elements must be present to render a master liable for his servant's actions under respondeat superior: first, the servant must be in furtherance of the master's business; and, second, he must be acting within the scope of his master's business." *Drury v. Harris Ventures, Inc.*, 302 Ga.App. 545, 546–47, 691 S.E.2d 356 (2010).[2] All of the complained acts occurred in Defendant's Facility, while Plaintiff and her harassers were working on the clock. Prince and Parks committed the batteries while they were

---

[2] "[W]hether the tort was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment" is the test to determine whether an employee was acting in the scope of employment. *New Madison S. P'ship v. Gardner*, 231 Ga.App. 730, 732(1), 499 S.E.2d 133 (1998).

9

arguably engaged in work-related tasks. A jury should decide whether these employees engaged in such conduct for purely personal reasons or to further their master.

*2. Negligent Retention and Negligent Supervision*

Plaintiff also asserts claims based on negligent hiring and negligent retention. OCGA § 34-7-20 provides that an employer:

> is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency . . . Thus, the appellate courts have recognized that an employer may be liable for hiring or retaining an employee the employer knows or in the course of ordinary care should have known was not suited for the particular employment[.]

(citations and punctuation omitted); *Munroe v. Universal Health Svcs., Inc.*, 277 Ga. 861, 862, 596 S.E.2d 604 (2004) (an employer may be liable for hiring or retaining an employee the employer knows or in the course of ordinary care should have known was not suited for the particular employment). Defendant had both actual and constructive notice of the sexual harassment and failed to take prompt and appropriate remedial steps to protect Plaintiff from sexual harassment and retaliation as set forth above. Defendant failed to exercise reasonable care, and as a result, Plaintiff suffered harm and damages. Where the gravamen of the negligent retention and negligent supervision claims are a breach of a duty owed, Plaintiff is able to show significant, material breaches of a duty Defendant owed her; Plaintiff was entitled to a workplace free of unreasonable fear of sexual harassment, a hostile work

environment, and fear of illegal retaliation. As a result of Defendant's negligent retention and supervision of Plaintiff's workplace and co-workers, Plaintiff suffered damage, and Defendant should be denied summary judgment on these claims.

## V. CONCLUSION

For the foregoing reasons, that Plaintiff has demonstrated the presence of material issues of fact that must be decided by a jury. Therefore, Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted this 16th day of January, 2018.

*/s/ J. Stephen Mixon*
J. Stephen Mixon
Georgia Bar No. 514050
steve@mixon-law.com
Gregory Y. Shin
Georgia Bar No. 446452
greg@mixon-law.com

Attorneys for Plaintiff

MILLAR & MIXON, LLC
1691 Phoenix Boulevard, Suite 150
Atlanta, GA 30349
Phone: (770) 955-0100
Fax: (678) 999-5039

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| WENDY BENSON, ) | |
| ) | |
|    *Plaintiff*, ) | |
| ) | CIVIL ACTION FILE NO. |
| v. ) | |
| ) | 1:16-CV-04638-CAP-RGV |
| SOLVAY SPECIALTY POLYMERS ) | |
| USA, LLC ) | |
| ) | |
|    *Defendant*. ) | |
| ) | |

## CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that the foregoing documents were prepared using a Times New Roman 14-point font, and that I have on this date served a copy of the within and foregoing Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment by filing a copy of the same with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

Respectfully submitted this 16th day of January, 2018.

*/s/ J. Stephen Mixon*
J. Stephen Mixon
Georgia Bar No. 514050
steve@mixon-law.com

MILLAR & MIXON, LLC
1691 Phoenix Boulevard, Suite 150

Atlanta, GA 30349  
Phone: (770) 955-0100  
Fax: (678) 999-5039